

THE CITY OF NEW YORK
LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

MURIEL GOODE-TRUFANT
*Corporation Counsel*

JESSICA OCHOA
*Senior Counsel*
Phone: (212) 356-3159
Fax: (212) 356-3509
jochoa@law.nyc.gov

January 27, 2026

**VIA E.C.F.**
Honorable Peggy Kuo
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    *Ahmad Moussa, et al. v. City of New York, et al.*, 25-CV-4732 (FB) (PK)

Your Honor:

    I am a Senior Counsel in the Office of Muriel Goode-Trufant, Corporation Counsel of the City of New York, and the attorney for defendants in the above-referenced case. Defendants respectfully request that the Court bifurcate plaintiff's municipal liability claim against the City pursuant to *Monell v. City of New York Department of Social Services*, 436 U.S. 658 (1978), and stay *Monell*-related discovery until after liability, if any, has been established against the individual City defendants.

    On November 12, 2025, Plaintiffs served defendants with a 30(b)(6) Deposition Notice. See Exhibit A, Plaintiffs' November 12, 2025, 30(b)(6) Deposition Notice. On November 13, 2025, Defendants stated that they would object to the notice and requested clarification as to why a 30(b)(6) witness was needed. Plaintiff responded to this email, stating, *inter alia*, "please refer to our complaint and causes of action related to negligent hiring, Monell and institutional policy matters". Plaintiff requested a written response to their 30(b)(6) notice. Upon further review of the notice, Defendants believed that our objections would be better articulated via phone call. Defendants have been attempting to hold a meet and confer in accordance with your Honor's Individual Rules. At this point in time, Defendants believe a meet and confer is unlikely to be productive. Defendants now move to bifurcate *Monell*-related discovery. Discovery currently closes on May 29, 2026.

    For some background, 8 plaintiffs make claims of first amendment retaliation, excessive force, kettling, and a *Monell* claim, as well as various state law claims. In general, the Plaintiffs allege the following: Plaintiff Hamad alleges she was pushed by an officer and officers pulled her hijab off. Plaintiff Wong claims he was placed in a headlock, lifted off the ground and punched in the head several times. Plaintiff Ibrahim claims he was kettled and arrested for

refusing to disperse. Plaintiff Moussa alleges that he was grabbed and thrown face first into the ground before he was arrested for refusing to disperse. Plaintiff Patel claims that she was kettled and tossed to the ground before being violently arrested, including having her hijab pulled off. Plaintiff Boukendakji claims he was thrown to the ground by five officers and that they placed their knees on his back. Plaintiff Garcia alleges she was touched sexually by an officer and arrested. Plaintiff Sklar-Luers alleges that they were also thrown to the ground and arrested. All Plaintiffs claim various physical and emotional injuries.

Firstly, Plaintiffs' notice is irrelevant to the actions alleged in the Complaint. Each of the Plaintiffs' allegations relate to alleged discrete acts by the officer defendants. In fact, a majority, if not all, of Plaintiffs' 30(b)(6) have nothing to do with the allegations in this case. Moreover, Plaintiffs' notice demands testimony that are duplicative of paper discovery already exchanged and are not appropriate 30(b)(6) topics in this matter. See Exhibit A at ¶¶ 2, 23, 32, 33, 34, and 35. While some of the policies and practices may be relevant to inform an individual's decision-making, this requested discovery is duplicative of Plaintiffs' Document Requests and Defendants' Response with a link to NYPD's Patrol Guide and Administrative Guide, which is publicly available, and provided to Plaintiff as part of Defendants' response to Plaintiffs' Document Requests.

Crucially, Plaintiffs have failed to name a specific policy or procedure as part of their *Monell* claim that would result in the need for a 30(b)(6) witness. Instead, Plaintiffs rests their *Monell* claim on the fact that they allege that NYPD sends "officers to Israel for trainings and shares surveillance information with Israeli agencies." There is no basis for this claim beyond Plaintiffs stating so with a quote from Deadly Exchange.[1] Nor does this claim relate to the individual acts alleged in this case. For example, "all information concerning any agreements, memoranda of understanding, or informal arrangements between the City of New York and the Israeli governmental or private security entities". See Exhibit A ¶¶ 13. This is insufficient for a *Monell* claim or a deposition of a 30(b)(6) witness.

The information requested is overbroad and irrelevant to the allegations in the Complaint. For example, the 30(b)(6) notice makes 15 requests related to government relations with Israel such as "all information concerning visits by the Mayor or City officials to Israel, including the purpose, participants, itinerary, and entities involved in organizing or funding the trips" and "all information concerning donations, sponsorships, or material support to the City or its agencies from Israeli-linked organizations or companies." See Exhibit A ¶¶ 11 and 14. These requests far exceed the claims at issue. Further, the 30(b)(6) notice makes 6 requests related to intelligence the City may have, including "all information concerning coordination between the Mayor's Office and the NYPD Intelligence and Counterterrorism Bureau on monitoring political activity or demonstrations since the event of October 7, 2023". See Exhibit A ¶¶ 20. The information related to these requests may implicate the attorney-client, attorney-work product, law enforcement, official information, and/or deliberative/pre-decisional privileges. Plaintiffs are

---

[1] Deadly Exchange is a political campaign group dedicated to ending alleged "exchange programs" between United States law enforcement agencies and Israel.

seemingly intending to go on a fishing expedition. The information requested in the 30(b)(6) notice does nothing more than seek a referendum on the City's relations with Israel beyond the actions of the individual defendants and the alleged violations of the Plaintiffs' civil rights.

Rule 42(b) of the Federal Rules of Civil Procedure provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, cross claims, counterclaims, or third-party claims." FED. R. CIV. P. 42(b); *see also Ricciuti v. New York City Transit Auth.*, 796 F. Supp. 84, 86 (2d Cir. 1999). "It is also established that bifurcation requires the presence of only one of these conditions." *Id.* Courts in the Second Circuit "often order bifurcation in 1983 civil rights cases where there are *Monell* claims against the municipality." *Tabor v. New York City*, No. 11-CV-195 (FB), 2012 U.S. Dist. LEXIS 29004, at *31–32 (E.D.N.Y. Feb. 23, 2012) (collecting cases); *see also Mineo v. City of New York*, No. 09-CV-2261, 2013 U.S. Dist. LEXIS 46953, 2013 WL 1334322, at *1 (E.D.N.Y. Mar. 29, 2013) ("Courts in this Circuit favor bifurcating *Monell* claims.") (collecting cases). As another court in this Circuit recently explained:

> A municipality may not be held liable for unconstitutional conduct under § 1983 on the basis of respondeat superior. *Monell*, 436 U.S. at 693-95. Thus, a plaintiff must establish that the municipality itself was directly at fault, *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985), by linking a predicate "constitutional tort," some "purposeful or knowing conduct," or "deliberate indifference," *Farmer v. Brennan*, 511 U.S. 825, 835-41, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (internal citations omitted), to a specific "action pursuant to official municipal policy," *Monell*, 436 U.S. at 691. This analytical structure often drives courts in this Circuit to "bifurcate or stay discovery on *Monell* claims until after the plaintiff established that an individual defendant violated the plaintiff's constitutional rights." *Lopez v. City of New York*, No. 20 Civ. 2502 (LJL), 2021 U.S. Dist. LEXIS 123469, 2021 WL 2739058, at *2 (S.D.N.Y. July 1, 2021); *see e.g., Ricciuti v. New York City Transit Auth.*, 796 F. Supp. 84, 88 (S.D.N.Y. 1992) (granting motion to bifurcate discovery in a *Monell* action).

*Jimenez v. City of N.Y.*, 2025 U.S. Dist. LEXIS 56774, at *44 (S.D.N.Y. Mar. 27, 2025).

Considerations of efficiency and convenience weigh strongly in favor of bifurcating *Monell* claims and resolving the underlying claims before undertaking the burdensome and time-consuming task of litigating *Monell* claims. Indeed, "[t]he overwhelming weight of authority holds that since the City's liability is derivative of the individual defendants' liability, and since the proof required to establish a *Monell* claim is substantially different from the proof necessary to establish individual liability, the most prudent course is to try the *Monell* claims separately and to stay discovery concerning those claims until the liability of the individual defendants is established." *Morales v. Irizarry*, No. 95-CV-5068 (AGS) (HBP), 1996 U.S. Dist. LEXIS 15613,

at *3 (S.D.N.Y. Oct. 22, 1996); *see also Amato v. City of Saratoga Springs*, 170 F.3d 311 (2d Cir. 1999) ("Section 1983 actions are particularly well suited for bifurcation because the evidence needed to show a 'policy and custom' on behalf of the municipal entity is often unnecessary in the suit against the individual official").

This is particularly so where, as here, plaintiff seeks voluminous discovery involving multiple agencies on topics well outside the scope of the alleged wrongdoing. Under these circumstances, bifurcation will serve to conserve resources and avoid inefficient, numerous, and unnecessary discovery disputes. *See Moss v. City of N.Y.*, 2023 U.S. Dist. LEXIS 197195, at *1 (S.D.N.Y. Nov. 2, 2023) ("Staying discovery of the *Monell* claim . . . will save the parties time and expense [I]f some claims survive summary judgment, any ensuing *Monell* discovery will be more closely tailored to the surviving claims."); *Rodriguez v. City of N.Y.*, No. 21-CV-1649 (AMD) (RLM), 2022 U.S. Dist. LEXIS 195034, at *4 (E.D.N.Y. Oct. 20, 2022) ("The plaintiff's *Monell* claim goes well beyond the question of the individual defendants' liability, and discovery would require the City to expend significant additional resources and effort that might well prove to be unnecessary. If the jury determines that the individual defendants did not violate the plaintiff's rights, the *Monell* claim is eliminated.").

For these reasons, bifurcation of the *Monell* claim and a stay of the related discovery is warranted. Accordingly, defendants respectfully request that the Court bifurcate plaintiff's *Monell* claim and stay the related discovery until after liability, if any, has been established against the individual defendants.

Thank you for your time and consideration.

Respectfully submitted,

/s/ *Jessica M. Ochoa*
Jessica Ochoa
*Senior Counsel*

**BY ECF**
*All Counsel*

4