

STEVEN BANKS
*Corporation Counsel*

**T**HE **C**ITY OF **N**EW **Y**ORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, N.Y. 10007

SEAMUS O'CONNOR
*Assistant Corporation Counsel*
phone: (212) 356-2337
seoconno@law.nyc.gov

May 18, 2026

**VIA E.C.F.**
Honorable Peggy Kuo
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: Ahmad Moussa, et al. v. City of New York, et al.,
     25-CV-4732 (FB) (PK)

Your Honor:

  I am an Assistant Corporation Counsel in the Office of Steven Banks, Corporation Counsel of the City of New York, and an attorney representing the City Defendants in the above-captioned matter. Defendants write to respond to Plaintiff's discovery motion and raise discovery issues.

  I.  Procedural Background

  On May 5, 2026, Plaintiff filed a motion for discovery demanding the Court set a deadline for Defendants to provide all BWC footage, the Commond Log and Activity Logs Entries of the Arresting Officers of Plaintiffs, policies and regulations concerning the October 23, 2023 incident and internal NYPD communications. (ECF No. 71) On May 6, 2026, the Court ordered the City to respond to Plaintiff's motion by May 11, 2026. (Text Order dated May 6, 2026). On May 7, 2026, the undersigned filed a letter motion for substitution of counsel which the Court granted, and a request for an extension of time to respond to the letter, in light of the change in counsel. (ECF No. 73 and 74) The Court granted the extension and ordered Defendants to respond to the motion by May 18, 2026.

  II.  Response to Plaintiff's Requests.

  First, plaintiff demanded the Command Logs and BWC footage from the incident. Defendants provided the remaining Command and Activity Log entries to Plaintiffs on May 8, 2026, and so that request is moot.

Plaintiff has also requested "all body worn camera footage" of the plaintiffs from the incident. This case involves the arrest of eight separate plaintiffs at a protest. Numerous officers activated their body worn cameras during that protest, and as a result, defendants have over 500 individual video files covering a span of several hours. These files related not just to the defendants but to other non-parties arrests as well. Defendants cannot simply turn over all the Body Worn Camera footage as that implicate non parties' arrests. Giving Plaintiff unlimited access to the possible arrests and activities of non parties would implicate the rights and privacy interetests of dozens of individuals unrelated to this lawsuit. This office has a team of people in the process of reviewing the footage to find BWC footage that depicts any plaintiff. This process is time consuming, made more so because the photos Plaintiffs' provided of them to assist in identification are not of the date of incident which has slowed the identification process. Even so, defendants have identified some videos that contain footage of Plaintiffs Ahmed Boukendakdji and Umahani Hamad on the date of incident and have produced them to Plaintiffs bearing Bates Stamps Nos. DEF0002725, DEF002726 and DEF002727. Defendants are continuing to review the BWC and will produce the relevant videos on a rolling basis as they are identified.

Plaintiff also moves to compel all policies and trainings applicable to the October 21, 2023 incident. However, Plaintiffs has been completely unclear as to what exactly they are seeking, even when defendants make good faith efforts to suggest certain categories of documents. For example defendants have pointed to the Patrol Guide whose sections appear to be relevant to what Plaintiffs claim. On March 16, 2026, Plaintiff responded that these documents do not identify "the September 5, 2023, consent decree between NYPD and the Office of the New York State Attorney General." However, there is no such consent decree. (Exhibit A-Defendants' Response to Plaintiff's Deficiency Letter at p. 1) Defendants cannot be expected to respond to Plaintiff's request if Plaintiffs themselves are unclear of what they are seeking. Similarly, the Court cannot compel the production of relevant policies and trainings without any explanation from plaintiff of what is meant by "relevant" documents.

Regarding Plaintiffs' Request for training applicable to the October 21, 2023, incident Plaintiffs' request is overbroad. The NYPD constantly conducts trainings, and it would be impossible to produce all of them that were in effect on that date. In addition, the Court bifurcated Monell discovery on February 9, 2026, therefore to the extent that Plaintiffs are asking for trainings for the entirety of NYPD is improper in scope. The more appropriate scope would be to ask for the relevant trainings of the individual officers involved with each plaintiff, if and when they are identified, and then provide only the materials related to the trainings these officers actually attended. Further, training logs that can be found for each individual officer that can be named so far can be found online.[1] However, no additional officers have been named and due in part to plaintiffs' delay in producing releases, defendants are still in the process of identifying individuals who interacted with the plaintiffs. Therefore, Plaintiff's request for all NYPD trainings is also objectionable to the extent they are asking for information that is not relevant, burdensome, and unclear.

Plaintiffs finishes their request for "all" NYPD internal communications concerning the October 21, 2023 incident. The undersigned is unclear of what Plaintiffs mean by "internal NYPD

---

[1] https://nypdonline.org/link/officer-profile.

communications" as the request is too vague and could mean mean a variety of documents and/or messages. To the extent the undersigned is interpreting Plaintiff's request as an extension for Plaintiffs' Document Request No. 28 which requested "all documents, whether physically or electronically stored, related to the October 21, 2023, incident, including but not limited to text messages, emails, voice messages, memoranda, letters," (Exhibit B-Defendants' Responses to Plaintiff's Document Request and Interrogatories at p. 31) Defendants objected on the grounds that the request is vastly overbroad as it requests information concerning "all communications" but fails to meaningfully limit the sources of the information, fails to meaningfully limit the information requested to incidents involving the Plaintiffs, and it is not limited in time or scope. Defendants will ask any named officers and/or individuals who Defendants' identify as having interacted with a Plaintiff if they have relevant texts or emails but those individuals need to be identified. What Plaintiff is asking for is a data dump that would implicates the privacy interests and personal safety interests of the non-party individuals and non defendant NYPD employees, to the extent that it calls for the production of documents that may be sealed, and may infringe on their privacy rights. Plaintiff has not demonstrated this broad request is proportional to the needs of the case compared to the burn of requesting Defendants produce any possible document that could fit Plaintiffs' vague criteria of what counts as an "internal communication."

III.     Plaintiff's Outstanding Discovery Responses

A. Blanket 160.50

Defendants have requested Plaintiff provide blank 160.50 releases to access Plaintiff's prior arrest history.[2] Plaintiffs stated they have provided 160.50 releases in January, 2026 which are referring to limited 160.50 releases concerning the incident underlying this case. It is Defendants' understanding that Plaintiffs have not returned a signed blanket 160.50 release for each Plaintiff. Plaintiffs' prior arrest history is relevant and discoverable in this case for two reasons. First, it is undisputed that at least three Plaintiffs emotional damages from the arrest are a central issue in this case. (ECF No. 19 at p. 21-23.) Plaintiff states in both the Amended Complaint that the primary damages Plaintiff is seeking are emotional damages. (See ECF No. 19 at ¶¶ 127, 142) ("Ms. Hamad feared for her life and well-being. She felt degraded and humiliated and continues to feel emotional distress as a result of this incident.") ("Mr. Fong continues to suffer from anxiety and emotional distress as a direct result of the incident.") Specifically Plaintiff Moussa points to "taking days off of school" as a result of the emotional damages his arrest allegedly caused him. (ECF No. 19 at ¶ 176.) Plaintiffs' complete arrest records would allow Defendants to better assess whether Plaintiff' emotional damages were substantial. If Plaintiff's prior arrest records are not produced the only measure of Plaintiff's emotional damages from the arrest is Plaintiff themselves. This would unduly prejudice Defendants as they would be unable to contest Plaintiffs' argument that they suffered "distress" and "emotional injury" as a result of his arrest. Plaintiffs' prior arrest history is necessary to accurately assess his damages and therefore they should be produced.

---

[2] There are additional discovery responses Defendants are waiting for Plaintiffs to respond to. However, these matters are not yet ripe to bring to the Court's attention. If the parties are unable to reach to a resolution Defendants will notify the Court and move to compel these specific responses.

The records Defendants are seeking have been deemed relevant by Second Circuit courts in similar cases. Cicero v. City of New York, 11 CV 360 (NGG) 2011 U.S. Dist. LEXIS 80880, 2011 WL 3099898 at *10 (E.D.N.Y. July 25, 2011) ("Thus, details of plaintiff's prior arrests may be relevant to assessing his emotional injuries in the pending litigation."). Courts reason that disclosure of prior arrests is necessary because "A plaintiff who has previously been incarcerated 'may suffer less damage as a result of a subsequent wrongful incarceration.'" Id. (citing Ford v. Wells, 347 F. Supp. 1026, 1030 (E.D. Tenn. 1972)). In Schiller v. City of New York, the court held that prior arrest records are relevant to the assessment of damages notwithstanding their admissibility at trial: "[t]he City correctly points out that 'documents detailing [plaintiff's] prior arrest experiences, previous arrest processing, and criminal court proceedings are relevant to refute [his] claims regarding the cause and extent of emotional distress damages attributable'" to the arrest and confinement at issue. Schiller v. City of New York, Nos. 04 CV 7922, 04 CV 7921, 05 CV 8453, 2006 U.S. Dist. LEXIS 88854, 2006 WL 3592547, at *8 (S.D.N.Y. Dec. 7, 2006). The Schiller court ultimately compelled release of the sealed arrest records, even for arrests that occurred out-of-state and/or did not result in a conviction or incarceration. Id. 2006 U.S. Dist. LEXIS 88854, [WL] at * 3, *8. Case law from the Second Circuit supports Defendants' argument that Plaintiffs' arrest records are necessary to this case.

Second, Plaintiffs' arrest history could weigh on Plaintiffs' credibility. If Plaintiffs' prior arrests involved *inter alia*, failure to disperse, walking in the roadway next to available sidewalks, or similar related charges, the records may lead to information that would cast doubt upon Plaintiffs' credibility with respect to their contention that NYPD lacked probable cause to arrest them. See Schiller v. City of New York, Nos. 04 Civ. 7922, 04 Civ. 7921, 05 Civ. 8453, 2006 U.S. Dist. LEXIS 88854, 2006 WL 3592547, at *8 (S.D.N.Y. Dec. 7, 2006); See Fryar v. City of New York No. 10 CV 5879, slip. op. at *1 (E.D.N.Y. May 4, 2011). Plaintiffs' previous arrest history is relevant to this case and should be produced.

Accordingly, Defendants respectfully requests that the Court compel each Plaintiff to produce an executed blanket § 160.50 unsealing release by a date certain.

Defendants thank the Court for its time and consideration herein.

Respectfully submitted,

_____/s/ *Seamus O'Connor*_____

Seamus O'Connor
*Assisstant Corporation Counsel*

cc:    All Counsel (via ECF)

4