

LAW FIRM OF
# OMAR T. MOHAMMEDI, LLC

233 BROADWAY, SUITE 820
WOOLWORTH BUILDING
NEW YORK, NY 10279
PHONE (212) 725-3846
FACSIMILE (212) 202-7621
WWW.OTMLAW.COM

OMAR T. MOHAMMEDI, ESQ.
DIRECT DIAL: (212) 725-3846 x101
EMAIL: OMOHAMMEDI@OTMLAW.COM

ADMITTED: NEW YORK, EIGHTH CIRCUIT
SECOND CIRCUIT, US COURT ON INTERNATION

+

May 26, 2026

**VIA E.C.F.**
Honorable Peggy Kuo
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *Ahmad Moussa, et al. v. City of New York, et al.*, 25-CV-4732 (FB) (PK)

Your Honor,

This office represents the Plaintiffs in the above referenced civil matter. We write in opposition to the Defendants' May 18, 2026 opposition (ECF 75) to Plaintiffs' May 5, 2026, request to set-down a paper discovery end date (ECF No. 71). The application requested a conference to avoid motion practice. Plaintiffs are filing this reply because Defendants' response raised issues, including a motion to compel against Plaintiffs, beyond Plaintiffs' request in its May 5, 2026, letter motion. Plaintiffs' May 5, 2026 motion sought only to discuss paper discovery deadlines where Defendants have delayed the production of documents extensively frustrating the purpose of an open fair discovery.

Defendants' May 18, 2026 papers punctuate why Plaintiffs filed their May 5, 2026 letter. In their letter, Defendants mischaracterize the communications between the undersigned counsel and Defendants' prior Assistant Corporation Counsel Jessica Ochoa ("Ms. Ochoa") further putting us back further rather than advancing this discovery stage. As detailed in the following outline of events, the undersigned counsels and Ms. Ochoa met and conferred about outstanding discovery and reached an agreement (see, e.g. ECF No. 67) that has not been complied with due in part to the turn-over rate at the Law Department causing extensive delays in this discovery:

- Jan. 21, 2026: Plaintiffs produced responses to Defendants' first set of Requests for Production and Interrogatories, including HIPAAs and 160.50s.

- Jan. 28: Plaintiffs send First Deficiency Letter to Defendants, noting that Defendants had only produced 22 pages of documents.

- Feb. 27: The parties submit a Joint Status Letter detailing the delays involved in discovery thus far, noting that the names of several officers are still unknown (ECF No. 63).

- Mar. 6: Ms. Ochoa sends Defendants' First Deficiency Letter. The alleged deficiencies consist of Plaintiffs' HIPAA forms, and "Blanket 160.50 releases." This is the first time that Defendants requested "Blanket 160.50 releases." Defendants did not explain why the 160.50 releases already provided to them were insufficient.

- Mar. 10: The Parties Meet and Confer. Ms. Ochoa agrees to (1) search for additional intra-agency communications, (2) produce relevant training materials, and (3) provide the body-worn camera ("BWC") footage by April 30. Defendants' counsel stated that she needs more time to review "over 500 hours" of BWC footage from the incident to avoid sending any privileged or sealed footage. Plaintiffs proposed submitting a Confidentiality Order to address these concerns, though this should have been addressed by Defendants when Plaintiffs served them on November 25, 2025 or when they responded to Plaintiffs' discovery demand in January 28, 2026.

- March 14: Plaintiffs send an updated Supplemental Deficiency Letter in light of what was discussed on the March 10 meet and confer.

- March 18: Your Honor grants joint proposed Confidentiality Order (ECF No. 69).

- March 24: Defendants respond to Plaintiffs' Supplemental Deficiency Letter, 55 days from the date Plaintiffs sent their deficiency letter on January 28. However, the response did not include the many relevant documents as agreed with Defense counsel during the meet and confer on March 10, 2026.

- March 30: Plaintiffs request an update on outstanding documents discussed at the meet and confer but to no avail.

- Apr. 17: Ms. Ochoa resigns as Assistant Corporation Counsel ("ACC").

- Apr. 30: Mutually agreed-upon deadline for production of BWC footage passes without any production or communication from Defendants.

- May 5: Plaintiffs file motion for paper discovery deadline (ECF No. 71) requesting a hearing to address paper discovery deadlines due to the lack of response from Defendants despite the meet and confer agreement and the resignation of Ms. Ochoa and no counsel filed a notice of appearance on behalf of the Defendants. The resignation of the Defendants' counsel left Plaintiffs hanging without any recourse, except for informing the Court so that Plaintiffs' case proceeds in an orderly manner in this discovery period to preserve Plaintiffs' right to an open and fair discovery without further delays.

- May 7: Seamus O'Connor filed his appearance to replace Ms. Ochoa as ACC (ECF No 72).

- May 8: Plaintiffs produced the updated HIPAAs.

- May 18: Defendants respond to the motion for paper discovery (ECF No. 75). In their response Defendants are now objecting to the production of documents which were discussed during the meet and confer with the outgoing assistant corporation counsel. This continued gamesmanship in discovery has frustrated the purpose of fair and open discovery and has unnecessarily delated the orderly progression of this matter, causing prejudice to Plaintiffs.

## Body Worn Cameras (BWC)

Defendants did not produce any BWC footage until May 18, 2026, the same time Defendants filed their response before this court, despite assurance to deliver some, if not all, of the BWC by April 30, 2026. In addition, these videos are egregiously deficient and demonstrate that Defendants are withholding relevant information to Plaintiffs' case. The videos only show the time after the Plaintiffs were subjected to violence and falsely arrested.

According to Defendants, the initial delay in producing the BWC footage was due to the large volume of videos and the need to review them to protect non-parties' privacy. However, it was Plaintiffs who suggested during the March 10, 2026, meet and confer that the parties execute a confidentiality order to protect these privacy interests; none had been offered as an alternative until then. Nonetheless, the BWC footage Defendants turned over belies Defendants' concerns that they "cannot simply turn over all the Body Worn camera footage that implicate nonparties' arrests" (ECF No. 75) because the footage contains the identities of several non-parties in public areas. The footage produced does not show the NYPD's initial engagement and interaction with the Plaintiffs as depicted in the videos. This appears to be a pattern of obstruction and piecemeal compliance.

## New York Police Department (NYPD) Policies

On February 9, 2026, Your Honor memorialized the following: "Defendants agreed to produce policies, procedures, and training materials that are relevant to this action, and are directed to do so immediately." (Order dated February 9, 2026). After the parties' March 10, 2026 meet and confer, Plaintiffs noticed Defendants of the obligations to turn over "all internal policies, directives, and memos relating to this specific protest on October 21, 20203 (Doc. Request No. 21)."[1] This phrasing was agreed upon during the meet and confer with Ms. Ochoa. It is therefore concerning that Defendants' counsel is now asserting that "Plaintiffs has been completely unclear as to what exactly they are seeking, even when defendants have made good faith efforts to suggest certain categories of documents." The categories of documents that Defendants refer to in their May 18, 2026 letter are the ones that the parties discussed with Ms. Ochoa and were promised to be turned over. Ms. Ochoa repeatedly represented that she would verify with her superiors which of the category of documents discussed Defendants will turn over. The parties discussed at length the different demands, questions of overbroadness, the factual basis of Plaintiffs' demands and paired them down to specific requests. These requests are memorialized in the "Post 3/10/2026 Meet and Confer" email attached as Exhibit A. That Defendants, by new counsel, now describe Plaintiffs' demands as being "unclear" is disingenuous and

---

[1] Attached as Exhibit A is an email thread between the parties that includes the above-cited demands.

misrepresents the discussions the parties had. Defendants' position that Plaintiffs' demand is unclear after meeting and discussing same with Plaintiff makes meet and confer discussions meaningless and futile, causing the parties to re-litigate the same issue again, thereby causing further delays in offering Plaintiffs the opportunity to prosecute its case. This is exactly what Plaintiffs are facing in this discovery stage.

Defendants write in their May 18, 2026 letter that "[t]he more appropriate scope would be to ask for the relevant trainings of the individual officers involved with each plaintiff, if and when they are identified, and then provide only the materials related to the trainings these officers actually attended." Defendants have not done so much as that with respect to the officers that we do know. Defendants have a continued and ongoing obligation to open and fair discovery that they are now obstructing. Plaintiffs are entitled to the training materials. The Defendants' objection now is especially problematic when Defendants have an affirmative obligation to conduct a diligent search and to disclose the identities of all officers directly involved in the events at issue but failed to do so. The fact that Plaintiffs learned of additional officers only through careful review of produced documents raises serious concern as to whether Defendants' identification of involved personnel has been complete. Had these documents not been produced, Plaintiffs would have remained unaware of the involvement of these additional officers, thereby impairing Plaintiffs' ability to conduct discovery, examine witnesses, and seek leave to amend the Complaint as appropriate. This is precisely the type of prejudice that the discovery rules are designed to prevent.

Equally as problematic is Defendants' refusal the provide the executed or court-ordered version of the proposed stipulation in *In Re New York City Policing During Summer 2020 Demonstrations*, 20-CV-8924 (CM (GWG).[2] The lengthy stipulation outlines procedures and policies the NYPD is to follow when engaging with First Amendment Activity ("FMA"). The stipulation defines the term "kettling." Plaintiffs rely on the varying cases that comprise *In Re New York City Policing During Summer 2020 Demonstrations* and rely on the use of the term "kettling" from those cases; in their deficiency letter related to "kettling," Defendants responded: "Defendants object on the basis that is unclear what is meant by "kettling." Further, clarity is needed to properly respond to this request.".[3] This is an example of the gamesmanship Plaintiff must deal with and the bifurcation order simply gives Defendants more ammunition to do so. Defendants have not produced this stipulation either because they do not acknowledge it or because it contains policies and procedures that are damaging to their defense. That Defendants have not produced this document alone is troubling.[4]

## Plaintiffs' Blanket 160.50 Demand

Defendants' letter to the contrary notwithstanding, Plaintiffs have never objected

---

[2] See Exhibit B, a copy of the unsigned stipulation from *In Re New York City Policing During Summer 2020 Demonstrations*.
[3] Exhibit C, a copy of Defendants' March 24, 2026 objections.
[4] See Exhibit D, an email from January 2026 to February 2026 discussing deficiencies, including those involving policies.

to Defendants demand to produce 160.50 authorizations.  Plaintiffs produced the 160.50 requests and HIPAA authorizations to Defendants on January 21, 2026. On March 6, 2026, Defendants made a second demand for a "blanket" 160.50 and noted a deficiency in the HIPAA authorization Plaintiffs provided. On April 8, 2026, Plaintiffs inquired of Defendants why additional 160.50 releases were requested.  Defendants' May 18, 2026 filing at ECF No. 75 is the first time Defendants have expressed the reasons for another 160.50.

As noted above, both parties have a responsibility to comply with the obligation to open discovery. Despite Defendants' complaints to the contrary, Plaintiffs responded to Defendants' demands on January 21, 2026.  Defendants did not object until March 6, 2026. Defendants effectively waived any objections to Plaintiffs' responses to their demands. Nevertheless, based in large part to the March 10, 2026 meet and confer, Plaintiffs responded to Defendants' objections in an April 27, 2026 letter[5] and agreed to turn over, among other things, the second set of HIPAA authorization.

Defendants' May 18, 2026 response to Plaintiffs' May 5, 2026 letter is a stark departure from the discussions Plaintiffs had with Ms. Ochoa. We hope there are no future turn-overs in the Law Department that will negatively impact this case. Plaintiffs thank the Court for their time and consideration and look forward to discussing these discovery matters at the upcoming conference.

/s/ Omar T. Mohammedi
Omar T. Mohammedi, Esq.
Mustapha Ndanusa, Esq.
Law Firm of Omar T. Mohammedi, LLC
Woolworth Building
233 Broadway, Suite 820
New York, NY 10279


/s/ Brendan Carroll
Brendan Carroll, Esq.
The Council on American-Islamic Relations, New York
Woolworth Building
233 Broadway, Suite 820
New York, NY 10279


Cc: Defendants' counsel (via ECF)

---

[5] See Exhibit A attached.